IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID LIPE, DAVE STEPHENS, ROBERT
BOOKOUT, and LELAND SINCLAIR,

Plaintiffs,

vs.

Case No. 05-1009-JTM

MID-CENTRAL MFG., INC., a Kansas
corporation,

Defendant.

MEMORANDUM AND ORDER

This is an action by four former employees, David Lipe, Dave Stephens, Robert Bookout, and Leland Sinclair, alleging that Mid-Central Mfg., Inc., their former employer, terminated their employment in retaliation for their use and exercise of their rights under ERISA. Mid-Central has moved for summary judgment on the plaintiffs' claims. For the reasons stated herein, defendant's motion is hereby granted.

**Findings of Fact**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual

allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The findings of fact reached here exclude all purported factual claims which are not supported by particular reference to admissible evidence in the record.

Mid-Central makes component parts for the aircraft industry; its largest customer is Boeing. Before September 11, 2001, Mid-Central was a growing business with 40 employees. It had purchased new equipment and anticipated hiring additional employees. In July of 2001, Mid-Central's business was strong enough that the company was able to give Boeing a 15 percent price discount, which it hoped would result in manufacturing more parts for Boeing the following year.

It is uncontroverted that the September 11, 2001 terrorist attack crippled the aircraft industry. On October 4, 2001, Boeing announced that it would deliver 20 to 30 percent fewer airplanes. In February of 2002, Boeing announced it was reducing its workforce by 30,000 jobs.

In 2002, Mid-Central experienced a 54 percent decrease in sales to Boeing.

Mid-Central was left with unused capacity. The company tried to avoid a reduction-in-force in October of 2001 by entering into a partnership with the State of Kansas work share program. According to the program, participating employees worked part-time for Mid-Central and received unemployment compensation for their equivalent full-time days.

Despite these efforts, on February 15, 2002, Mid-Central's financial advisor told the Board of Directors that the company needed to cut five employee positions. Linda Jackson (the President of Mid-Central), Gregg Winkler (Vice-President of Sales), and Sheila Lary (Vice-President of Contracts), made the decision as to which employees to retain, based on their value to the company and jobs needed by the company. In addition to considering employee value, they also considered, in part, employee salaries and seniority in identifying who to retain. Jackson, Winkler, and Lary used their best business judgment and determined that the plaintiffs and Victor Ready were expendable because the other employees were able to do more for the company based on its needs at the time.

Vance Jopling, a supervisor at Mid-Continent, was told of the decision after it was made.

On February 22, 2002, the plaintiffs and Victor Ready were notified that they were being let go due to a reduction in force.

It is uncontroverted that Jackson, Winkler, and Lary used their best business judgment, and determined that the plaintiffs and Ready were expendable because the other employees were able to do more for the company based on its needs at the time. It is also uncontroverted that Jackson, Winkler, and Lary did not consider group health insurance benefits in discharging the plaintiffs.

The facts in the preceding paragraph are uncontroverted because plaintiffs fail to dispute them in a manner consistent with D.Kan.R. 56. Instead, plaintiffs merely object to defendant's proffered facts as improperly "rais[ing] issues of credibility," and then, citing only their Complaint, state that they "have a different view of defendant's motives." (Resp. at 6). The objection is insufficient as a matter of law. Employers are required and permitted, under the framework established in *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973), to show that their

3

employment decision occurred for a legitimate, nondiscriminatory reason, and plaintiffs provide no authority for the proposition that an employer is not entitled to state such reasons. Defendant's facts were here supported with affidavits by each of the three participants in the termination decision.

In contrast, the denial — based on the plaintiff's "different view" as reflected in the allegations advanced in their complaint — is plainly insufficient to controvert defendant's facts. Fed.R.Civ.Pr. 56(e) and D.Kan.R. 56(b)(1) require a party opposing a summary judgment motion to present controverting facts based on admissible evidence based on personal knowledge. The "plaintiff may not simply rely on conclusory allegations in her complaint; rather, she must come forward with specific facts showing a genuine issue for trial as to those dispositive matters for which she carries the burden of proof." *Wesley v. Don Stein Buick, Inc*. 42 F.Supp.2d 1192 (D. Kan. 1999). *See Coleman v. Darden*, 595 F.2d 533, 536 (10th Cir.), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979).

Diana Sterling (Mid-Central's Office Manager) has averred that the company does not receive notice when an employee or family member files a claim against the group health plan. Information about employee health filings is not available to Mid-Central. Plaintiffs respond to these facts by speculating that "the company obviously knows which of its employees are enrolled in its group health plans." (Resp. at 6). But the evidence only established that Sterling, the Office Manager, knew and Sterling was not a decision-maker as to the lay-offs. There is no evidence that any of the decision-makers (Jackson, Winkler, and Lary) were aware of the insurance enrollment status of any particular employee. Winkler has affirmatively testified that he did not know of such enrollments. And the central fact advanced in Sterling's affidavit is not controverted or even questioned by plaintiffs — the company had no knowledge of any employee's health insurance claims filings.

The five employees who were laid off were offered COBRA continuation coverage after their discharge, but each declined the offer.

Mid-Central's group insurance rates for 2002 were fixed as of February 1, 2002, before the Board of Directors decided to eliminate five positions and before the plaintiffs were discharged. Furthermore, on January 29, 2002, just as in the previous five years, Lawrence Kemp, an insurance broker used by Mid-Central to choose the company's group health plan provider, advised the employees about the current group plan, the necessity of increasing the deductible from $350 to $750 to reduce the rate increases, the employee contribution amount, and he also answered employee questions. Mid-Central generally changes plan providers each year because the rates have continually increased. Mid-Central pays only a percentage of the employee group health insurance premiums.

The company's insurance rates increased again in 2003, one year after the plaintiffs were laid off. Mid-Central was again forced to increase the deductible from $750 to $1000 to minimize the increase in premiums. Even with the increased deductible, Mid-Continent's premium cost rose from $223.87 per employee in December, 2001 (when plaintiffs were still working for the company) to $324.06 two years later. Still, health insurance premiums reflect less than 3% of Mid-Continent's expenses in each of the years from 2000 to 2004.

In addition to the February 2002 layoffs which included the plaintiffs, Mid-Continent eliminated five more positions in the rest of that year. With resignations and retirements, by the end of 2002, Mid-Central's work force had fallen from 40 employees to only 23.

In support of their suggestion that they were terminated because of their health insurance costs, plaintiffs point to various ailments and injuries they have sustained: Lipe (a back injury and surgery), Bookout (respiratory and cardiac conditions), Sinclair (heart condition and diabetes), and Stephens (replacement of a prosthetic leg). In addition, they note that Ready (who is not a plaintiff but who was also laid off) had surgery to correct a sinus problem in 2001. It is not clear how this last fact could support plaintiffs' theory of the case, however, since Ready was not enrolled in the group health plan.

In addition, plaintiffs allege that Jackson knowingly certified a Group Risk Assessment insurance form which failed to list certain employee health conditions. However, the evidence fails to support the allegation that Jackson knew of those health conditions at the time of the certification. The form was completed by an insurance representative who met with and interviewed Mid-Continent employees, including the plaintiffs, who failed to identify any health concerns. Jackson simply signed the form as the company representative, and there is no evidence that she was aware, at the time of the certification, that the employees' responses were not accurate.

Plaintiffs cite a lengthy series of heartless comments allegedly made by a supervisor, Vance Jopling, about the health conditions of Stephens, Lipe, Bookout, and Sinclair. However, the evidence establishes that Jopling was not a decision-maker regarding the terminations, and in fact he unsuccessfully opposed the discharges.

The only comments attributed to any decision maker are two purportedly made by Winkler, referring to Lipe as a "cripple," and (veering to the other extreme) allegedly stating that Lipe was "just faking" his injury. Winkler denies the comments.

Another employee was tardy a lot. Another employee required assistance in running a machine. A third employee had less experience than plaintiff Stephens.

However, the testimony of the decision-makers was that tardiness was not a criteria used for the reduction in force. Had the company strictly applied its attendance policy, one of the plaintiffs would have been terminated prior to the reduction in force. In each instance, defendants have pointed to legitimate business rationales for the decision to retain any given employee, keeping a mix of experienced people and lower-wage employees. In addition, some employees who were known to have ongoing medical problems were retained, including one with a seizure disorder.

Conclusions of Law

Plaintiffs allege that the defendants illegally retaliated against them in violation of § 510 of ERISA, which provides:

6

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. Allegations of ERISA retaliation are analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973). *See Kinkead v. Southwestern Bell Telephone Co.*, 49 F.3d 454, 456 (8th Cir.1995).

The court finds that plaintiffs fail to establish a prima facie case of ERISA retaliation in that they have failed to demonstrate circumstances which would give rise to an inference of discrimination. Most of plaintiffs' evidence focuses on a series of heartless comments allegedly made by a supervisor who was not involved in the reduction-in-force decision. At most, plaintiffs have shown only that some of the decision-makers knew of some health problems by the plaintiffs. The mere knowledge of an employee's medical condition is insufficient by itself to create an inference of retaliation. *See Phelps v. Field Real Estate*, 991 F.2d 645, 649-50 (10th Cir. 1993). Further, it appears that in several instances Mid-Central knew of the plaintiffs' condition when they were originally hired, further diminishing an inference from such knowledge. *See Bones v. Honeywell, Inc.*, 366 F.3d 869 (10th Cir. 2004).

Further, Lipe was not laid off until a year after his back surgery. Bookout was laid off eight months after he began to use an oxygen tank. Sinclair was laid off five months after his surgery. Because of the extended time between the time of the company's learning about the plaintiffs' ailments and the time of the reduction-in-force, the company's knowledge has no substantial inferential value. *Cf. Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 2001) (period of three months between protected activity and adverse job action did not create an inference of Fair Labor Standards Act retaliation).

Further, the uncontroverted evidence establishes that the decision-makers were not aware of any actual claims made on the company insurance policy. The worst of the comments cited by plaintiffs were all made by a supervisor not involved in the reduction-in-force decision. None of

those comments alter the uncontroverted facts that the decision-makers were not aware of the health insurance status of the employees, were not aware of any health insurance filings by employees, and did not take health insurance into account in the decision.

Although plaintiffs suggest that Ready was also terminated because of his health problems, it turns out that Ready was not enrolled in the company health plan. Two other employees later laid off in 2002 were also not enrolled in the plan. Conversely, the company kept a number of employees with substantial health problems, including one with a seizure disorder.

Taken collectively, the circumstances of the case fail to create an inference of retaliation. Plaintiffs were kept on the job long after their health conditions were known. They were ultimately discharged, along with other employees who were not enrolled in the health plan, while other employees with health problems were retained. As specifically noted in the findings of fact, it is uncontroverted the decisions-makers did not consider group health insurance benefits in discharging the plaintiffs. Plaintiffs have failed to present a prima facie case of ERISA retaliation.

Even had plaintiffs presented such a prima facie case, however, summary judgment would still be appropriate because plaintiffs have failed to demonstrate that Mid-Continent's proffered rationale is pretextual. Again, notwithstanding plaintiffs' unsupported and subjective "different view" of the defendant's motive, it is uncontroverted that the decision-makers Jackson, Winkler, and Lary used their best business judgment and determined that the plaintiffs and Ready were expendable because the other employees were able to do more for the company based on its needs at the time. Here, plaintiffs fail to show that those proffered reasons were false; they merely offer different factors (such as tardiness) which they argue the company might have considered.

Plaintiffs have introduced no evidence whatsoever that the reductions actually led to even any savings at all to the company. Plaintiffs have presented no economic analysis of health insurance costs generally during this time period. Indeed, what evidence is before the court shows that the company's per-employee health insurance costs actually rose by some 45% during the relevant time, notwithstanding the reductions-in-force. Even so, health insurance premiums never

rose more than three percent of Mid-Central's expenses. There is simply no basis for concluding that the termination of the plaintiffs yielded or could be expected to yield any direct benefit to the defendant.

There are no facts in the record which suggest that the company's decision was a mask for retaliation, rather than what all the evidence demonstrates — an attempt to ride out the economic devastation in the aircraft industry after September 11, 2001, and it is not the function of this court to determine which alternative criteria the company should have used in attempting to survive. Within a little more than a year, the defendant company lost almost half its work force. The speculation that the company engineered and endured these drastic losses as part of a scheme to save some unspecified fraction of the less than three percent of expenses it spends on employee health plans does not compel a different result.

Because the uncontroverted evidence fails to show that the company's reasons for the reduction in force were pretextual, summary judgment is appropriate.

IT IS ACCORDINGLY ORDERED this 8th day of December, 2005, that the defendant's Motion for Summary Judgment is hereby granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE